NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUIS B. FONTANA<br><br>    Plaintiff,<br><br>    v.<br><br>NEWCOURT CREDIT GROUP, INC., NEWCOURT FINANCIAL, USA, INC., THE CIT GROUP, INC. and AT&T CAPITAL CORP.,<br>    Defendants. | Civ. No. 03-5830(WGB)<br><br>**OPINION** |

**APPEARANCES:**

Stephen R. Bosin
**Stephen Roger Bosin, Esq.**
70 Grand Avenue
River Edge, NJ 07661

    Counsel for Plaintiff

Robert M. Leonard
Scott C. Carroll
**Drinker Biddle & Reath LLP**
500 Campus Drive
Florham Park, NJ 07932

    Counsel for Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

    The plaintiff, Louis B. Fontana, is seeking a judicial determination that when he resigned as Chief Counsel for Market Division at defendant AT&T Capital Corp.[1] he was entitled to

---

    [1] The defendants are Newcourt Credit Group, Inc., New Court Financial, USA, Inc., The CIT Group, Inc. and At&T Capital

1

severance benefits (in his case $200,000) provided for employees who experienced a qualifying event such as a reduction in force or "qualifying termination" under the 1966 AT&T Capital Leadership Severance Plan ("LSP") and that the determinations of the Plan Administrator and Benefits Committee that he was not entitled to any benefits because he quit the company were arbitrary or capricious. Or, in any event, Fontana argues he is entitled to recover by operation of the doctrine of equitable estoppel.

The court has jurisdiction by virtue of the fact that the severance benefits are provided pursuant to an ERISA-governed plan. 28 U.S.C. § 1331.  AT&T Capital now moves for summary judgment.

**I. BACKGROUND**

In 1992 Fontana was hired by AT&T Capital Corporation to work in its legal department.  In 1997, at the direction of AT&T's senior management, Robert Ingato, the General counsel of AT&T Capital, began plans to reorganize the legal department in order to make it more efficient.  According to Fontana he was told on September 19, 1997 that a more centralized model would replace the company's decentralized model for legal services.

Under the proposed reorganization plan all chief counsel

---

Corp Since the institutional relationships are immaterial, the defendants will sometimes be identified in this opinion as AT& T Capital for the sake of brevity.

positions would be eliminated and replaced by three Group counsel positions; his role would be that of senior counsel, Capital Markets. Fontana states that he was told by Robert Ingato, the Company's General counsel in the presence of Lyn Law, the Company's Vice President of Law And Government Affairs that his duties would be reduced to providing day-to-day transactional legal services and would no longer have control over a separate legal budget or manage litigation and bankruptcies. (Fontana Affidavit 2/25/05 ¶ 3 & 4.) The proposed reorganization would not, however, affect Fontana's salary and he would continue working on the same kinds of transactions. (Carroll Cert. Ex 2 at 43:13-44:4.)

In October of 1997, before the reorganization plan could be implemented, Fortuna resigned from AT&T Capital, joining Compaq Capital in November, where he is currently an assistant general counsel. The former general counsel of AT&T Capital Corporation, Dan McCarthy, had contacted Fontana to invite him to join Compaq Capital where McCarthy had gone to work. (Carroll Cert. Ex. 2 at 6:4-19.) Fontana candidly acknowledged his motivations:

> For some period of time I had been considering whether to resign and seek an offer of employment from Dan McCarthy who had been the company;s General counsel prior to Mr. Ingato. Based on various conversations with Mr. McCarthy over the preceding few months, I knew he was seeking a senior attorney and would offer me employment with Compaq Capital Corporation. Being told about the legal department reorganization and what

>     my diminished role would be "was "the straw
>     that broke the camel's back"; one more reason
>     to leave the company and move on. I
>     thereafter submitted my resignation.

(2/5/05 Fontana Affidavit ¶ 9.)

On November 17, 1997, General Counsel Robert Ingato dropped all plans for the reorganization of the legal department because of the announcement that Newcourt was acquiring AT&T, which it in fact did in January of 1998. (Carroll Cert. Ex. 7 at D00375.) Of course, by that time Fontana had left the company. Fontana in his depositions insisted that certain aspects of the reorganization never materialized, but since he was no longer with the company he did not really dispute AT&T Capital's position that the reorganization had not occurred. (Carroll Cert. Exh.2: Fontana Dep. P:26:13-18.) There is no evidence in the record to factually question the statement in the Plan Administrator's Package for Fontana's claim that "the planned reorganization of the AT&TC Legal department never took place." (Carroll Cert. Exh. 7 at D00375.)

Not only did the reorganization not take place, but Fontana acknowledges that his job duties, compensation and benefits never changed and that at the time he left the company he "did everything [h]e did before." (Defendant's Statement of Facts to Which There Does Not Exist A Genuine Issue Set Forth Pursuant to L. Civ. R. 56.1 (hereinafter "Defendants's Statement") at ¶14.) But whether the reorganization took place or not is immaterial.

Nothing further transpired for six years until October 23, 2003 when Fontana requested benefits under the LSP. (Defendant's Statement at ¶14.)

Fontana's letter with relevant information was submitted to the Plan Administrator.  Because of Mr. Ingato's recusal, the remaining qualified Plan Administrator under the plan, Susan Mitchell, the Vice President of Human Resources, reviewed the claim. (Defendant's Statement at ¶¶15, 16.)  The Plan Administrator denied the claim with an explanation in a letter to Fontana dated February 20, 2004. (Id. ¶17.)  The explanation is straightforward enough: Citing to the definition of a "Qualifying Termination" requiring termination before the second anniversary of the closing date or "a significant reduction in the Participant's duties as they exist immediately after the Closing Date . . . " the Plan Administrator determined that not only were Fontana's duties" not subject to a significant reduction," but that "as of the date of [his] resignation [his] duties were not reduced or altered at all."  The Plan Administrator went on to say that while Fontana "may have anticipated changes to [his] job duties at a future date, no changes occurred prior to your resignation."  None of this is disputed. (See Defendant's Statement at ¶17.)

By letter dated March 4, 2002 Fontana appealed the Plan administrator's decision to the Benefits Committee, supplementing

5

the facts in support of his claim by a letter of his counsel dated April 23, 2004. (Id. at ¶¶18, 19.)  The Benefits Committee denied the claim essentially for the same reasons of the Plan Administrator.  As explained by AT&T's Capital Corp.'s counsel's letter of June 29, 2004, after conducting a full review of Fontana's claim and reviewing the Plan Administrator's decision "it was the Committee's conclusion that as of the date of [his] resignation in October of 1997 [Fontana] did not experience a significant reduction in [his] job duties" and therefore" did not experience a Qualifying Termination under the Plan."  (Carroll Cert. Ex. 9.)

This litigation followed the Committee's denial of benefits. In Count One Fontana sues for breach of the AT&T Capital Plan (the LSP); in Count Two Fontana sues for breach of duties under ERISA, charging violations of ERISA sec. 503, 29 U.S.C. § 1133. AT&T Capital Corp now moves for summary judgment.

**II. Analysis**

A. Standard of Review of Denial of Benefits Under ERISA

A plan administrator's denial of benefits is reviewed de novo by the court, unless the benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Reich, 489 U.S. 101, 115 (1988); 29 U.S.C. § 1132 (a)(1)(b).  When a plan grants discretion to the plan administrator, as here,  the

determination will be disturbed only if it is arbitrary and capricious, or constitutes an abuse of discretion.  Id. at 111-112; see Moats v. United Mine Workers of Am., 981 F.2d 685 (3d Cir. 1992).[2]

A decision is "arbitrary and capricious" if it is not rational or based on consideration of the relevant factors. Moats, 981 F.2d at 687.  To warrant reversal, the administrative decision must be "without reason, unsupported by substantial evidence [and] erroneous as a matter of law." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993); accord McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F. 3d 253 (3d. Cir. 1994).

Fontana argues that a heightened standard of review should be utilized in light of Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377 (3d. Cir. 2000), arguing that there exists a conflict of interest since AT&T Capital Corp. both funds and administers the Plan.  The Court agrees with the position of At&T Capital Corp. that the proper standard in this case is the "arbitrary and capricious" standard as required by Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).  The Pinto case required a heightened review when an insurance company both funds

---

[2] Paragraph 19 of the LSP provides: "The Plan Administrator . . . shall have the responsibility and discretionary authority to interpret the terms of the Plan, determine eligibility for benefits and to determine the amount of such benefits." (See Tab B of Exh. 7 of the Carroll Cert.)

and administers benefits which is not the case here.  That is not to say that a heightened scrutiny could not be applied where the funds come directly out of the employer's pocket.  See Pinto, 214 F.3d at 389.  But the party asserting the conflict of interest" has the burden of showing some reason to believe that the exercise of discretion has been tainted." Id. at 386.  That burden has not been met here.

    B. Failure to Consider All the Facts

    Fontana argues that the Plan Administrator's decision was arbitrary and capricious because it did not consider all the facts.  What is really being argued is that the Plan Administrator should have determined that since the proposed changes would have constituted a significant reduction in his duties had he remained with the company, he experienced a "qualified termination" under the LSP.  The complaint is not that the Plan Administrator did not have these facts, but that it didn't reach the result Fontana wanted.  But that doesn't make the decision arbitrary.

    Fontana's argument that the decision is arbitrary because the Plan Administrator didn't determine whether there would have been a significant reduction in his duties misses the mark because there was no need to: the decision rests on the fact that Fontana had voluntarily left the Company before any changes were in fact made.

What Fontana is really arguing is that his decision to leave before the planned reorganization constituted a constructive termination.  Sufficient for ERISA is its existing legal complexity without transporting this concept to this case under these circumstances.  There is nothing arbitrary or unreasonable in the Plan Administrator's decision that the Plan benefits those who are employed and experience a significant reduction in duties and to deny benefits to those who are no longer employed by the Company and who experienced no reduction in duties while employed.

### C. Inconsistency of Analysis

Fontana argues that the "defendants repeatedly contend that Plaintiff never experienced a significant reduction in his duties and thus a Qualifying Termination did not occur" but that "the administrative record in this matter shows that the Plan Administrator, under similar facts, looked prospectively to see whether there would be a change in duties if that would result in the denial of benefits but did not do so here as that analysis would have resulted in the payment of severance benefits to Plaintiff." (Plaintiff's Brief at 17.)  AT&T Capital responds that the employees cited by Fontana are inapposite because these employees "were informed that the decision had already been made to transfer them into specific new positions with well-defined responsibilities." (Defendant's Brief at 3.)  AT&T Capital argues

9

that the administrative record "shows that the Plan Administrator and the Benefits Committee did review and deny other claims where the alleged changes were prospective but still hypothetical and speculative. (See Certification of Scott Carroll, Ex. 8 at D00378; see also Defendant's Brief at 4.)

At first blush this would seem to present a material issue of fact precluding summary judgment.  But that isn't the case.  What determines whether the decision of the Plan Administrator was arbitrary or unreasonable depends on what the Plan Administrator did and why, not the arguments of counsel.  Here the decision fundamentally rests on the fact that Fontana had separated himself from AT&T Capital **before** any changes in his duties - planned or otherwise.  The decision is not grounded on post-denial events but whether or not Fontana was with the company - his status as an employee.

### D. Failure to Follow the Law

Fontana argues that the decision is arbitrary and unreasonable because the defendants are abound by the decision in Recker v. New Court Credit Group, et al., 00-CV-71896 (E.D. Mich Oct. 30, 2002), where the District Court determined that Recker, former Chief Counsel of AT&T Capital Corp., was entitled to benefits under the LSP. Defendant responds that factual differences make collateral estoppel inapplicable since Recker , unlike Fontana, actually experienced a change in his job duties

10

before resigning. The short answer to this argument is that the District Court was reversed by the Court of Appeals. See Recker v. Newcourt Credit Group Inc., 126 Fed. Appx. 226(6th Cir. 2005) (holding that the administrator's finding that employee's duties were not significantly reduced after merger was not arbitrary and capricious).

### E. Defendants Are Equitably Estopped To Deny Plaintiffs's Claim

The argument is that because Fontana was told that his job duties would be reduced he was entitled to quit and claim benefits under the Plan. It is difficult for this Court to see how it is appropriate to apply equitable estoppel under the circumstances of this case. There was no material misrepresentation in the first place. Whether quitting in the face of planned but not implemented changes (with increased compensation) hardly seems reasonable. Alston v. Atlantic Electric Company, 962 F.3d 1544 (3d Cir. 1996). And Fontana has not identified any facts to demonstrate such "extraordinary circumstances" as to invoke estoppel. Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America U.A.W. v. Skinner Co., 188 F.3d 130, 152 (3d Cir. 1999).

### F. Summary Judgment

Fontana argues that Summary Judgment is not appropriate in this case because there are material issues of fact. But in fact there are none. Whether Fontana's job duties would have been

less with the reorganization has nothing to do with the reason the Plan Administrator denied him benefits; namely, while employed he suffered no change whatsoever.  And so there could not be a breach of contract or a violation of ERISA. Because the determinations of the Plan Administrator and Benefits Committee were not arbitrary and capricious judgment will be entered for the defendants.  An appropriate order follows.

Dated: December 29, 2005

                                           /s/ William G. Bassler
                                          William G. Bassler, U.S.S.D.J.